IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM DWYER,<br><br>    Plaintiff,<br><br>  v.<br><br>AT&T PENSION BENEFIT PLAN – NONBARGAINED PROGRAM,<br><br>    Defendant.<br>_____/ | No. C-10-5780 MMC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS; DISMISSING COMPLAINT WITHOUT PREJUDICE** |

Before the Court is the Motion to Dismiss for Failure to State a Claim, filed February 17, 2011 by defendant AT&T Pension Benefit Plan – NonBargained Program ("the Plan"). Plaintiff William Dwyer ("Dwyer") has filed opposition, to which the Plan has replied. Having read and considered the papers filed in support of and in opposition to the motion, the Court rules as follows.[1]

**BACKGROUND**

**A. Factual Allegations**

For purposes of the instant motion, the Court assumes the following facts, alleged by Dwyer in his complaint, are true.

Dwyer was employed by a predecessor of AT&T from 1968 until July 31, 1996, on

_____

[1]By order filed March 30, 2011, the Court took the matter under submission.

which date he "voluntarily terminated" his employment. (See Compl. ¶ 19, 94.) At the time of his termination, he was a participant in the Plan (see Compl. ¶ 1),[2] and, under the terms thereof, Dwyer "had the option to receive a payment of [his] pension . . . at the time of [his] [t]ermination either in the form of an annuity or in the form of a lump sum." (See Compl. ¶ 140.) Under the terms of the Plan, the payment was "subject to a discount to reflect the fact that [Dwyer] had not attained the age of 55 with a term of employment of at least 30 years." (See Compl. ¶¶ 4, 94.) Dwyer "opted for a Cashout Benefit instead of a Single Life Annuity and received a lump sum payment of $389,500" (see Compl. ¶ 96), which benefit, as characterized by Dwyer, was an "Accelerated Transition Benefit ["ATB"] Cashout Benefit" discounted by an "Early Payment Discount" (see Compl. ¶¶ 1, 95).

On April 1, 1999, Dwyer was hired by a predecessor of AT&T, and again became a participant in the Plan. (See Compl. ¶¶ 98-99.) Dwyer has "continued to be employed" by either a predecessor of AT&T or AT&T itself, and has continued to be a participant in the Plan. (See Compl. ¶¶ 18-19, 99). In the spring of 2009, Dwyer "requested an estimate of the benefits payable to him" under the Plan, and was sent a "Benefits Modeling Statement" dated April 1, 2009, which statement "estimated" the amount of pension benefits he would receive if he terminated his employment on December 31, 2009, specifically, a "CAM [Career Average Minimum] Benefit Single Life Annuity" payment of $1158.56 per month, or, alternatively, a "CAM Benefit on Partial Lump Sum of $30,338.95 plus a Single Life Annuity of $964.16 per month." (See Compl. ¶¶ 102-03.) Pursuant to a "subsequent request," Dwyer was sent an "updated Benefits Modeling Statement" dated November 18, 2009, which statement "estimated" the amount of pension benefits he would receive if he terminated his employment on March 31, 2010, specifically, a "CAM Benefit in the form of a Single Life Annuity of $1187.38 per month or a Partial Lump Sum of $30,770.67 plus a

---

[2]At the time of his 1996 termination, the applicable plan was titled the Pacific Telesis Group Case Balance Pension Plan for Salaried Employees. (See Compl. ¶ 17.) As a result of a series of mergers and/or acquisitions, the name of the applicable plan has changed and is presently known as the AT&T Pension Benefit Plan – NonBargained Program. (See Compl. ¶¶ 17, 19.)

Single Life Annuity of $974.77 per month." (See Compl. ¶ 105.)

**B. Legal Claims**

In his complaint, Dwyer alleges three counts on behalf of himself and a putative class. In support thereof, Dwyer alleges that, under his interpretation of the Plan as it existed at the time of his termination in 1996, if he was later rehired and then worked at least five years, he would have been entitled to receive "two benefits at [his] next termination": (1) "a Redetermined ATB;" and (2) "the greater of a Modified CB or a CAM Benefit." (See Compl. ¶¶ 5, 6, 106, 127.)[3] Dwyer further alleges that the Plan was amended on October 21, 1997, and, "on information and belief," he alleges that the Plan, in light of such amendment, is now being "administered" such that a person who upon an initial termination elected to receive his pension in the form of a lump sum payment rather than in the form of an annuity, and who is rehired on or after November 1, 1997 and works at least five years, is no longer entitled to receive a Redetermined ATB upon a subsequent termination. (See Compl. ¶¶ 7-8.)

In Count One, Dwyer alleges that under the terms of the Plan as it existed at the time of his termination, he had an "accrued benefit" in the form of an "entitlement" to receive both a Redetermined ATB and a cash balance benefit (see Compl. ¶ 117), and that the October 21, 1997 amendment "constitute[s] a prohibited cut back of benefits" in violation of 29 U.S.C. § 1054(g). (See Compl. ¶ 121.) As relief, Dwyer alleges, he is entitled to a "recalculation of the benefits for which [he is] eligible . . . as if no amendment had occurred." (See Compl. ¶ 122.)

In Count Two, Dwyer seeks a declaration, pursuant to 29 U.S.C. § 1132(a)(1)(B), that he is entitled to "a calculation of the benefits for which [he is] eligible" that includes "a Redetermined ATB." (See Compl. ¶ 130.)

In Count Three, Dwyer alleges that in the event the Plan is interpreted to provide that persons "do not have the right to receive a Redetermined ATB at their next termination

---

[3]Dwyer refers to the "Modified CB Benefit" and "CAM Benefit" as "cash balance benefit[s]." (See Compl. ¶ 6.)

3

after bridging service unless they elected to receive their pension as an annuity at their [f]irst [t]ermination," the Plan would be in violation of 29 U.S.C. § 1054(c)(3) and/or 29 U.S.C. § 1103(a).  (See Compl. ¶ 136.)  Specifically, according to Dwyer, if the Plan does not provide him a "Redetermined ATB" upon his "second termination," the Plan will violate § 1054(c)(3), which statute, Dwyer alleges, requires that he be provided "with the actuarial equivalent benefit as someone who had taken an annuity at [his] [first [t]ermination."  (See Compl. ¶ 143.)  Further, according to Dwyer, to the extent the Plan required that he sign a form, at the time he elected to receive his pension in the form of a lump sum, which form provided that he "forfeited" his right to receive a Redetermined ATB upon any later termination, the Plan violated § 1103(a) (see Compl. ¶¶ 144-45), which statute, Dwyer alleges, provides that an employee's right to a "normal retirement benefit" is "nonforfeitable after meeting the minimum vesting requirements" (see Compl. ¶ 138).

**DISCUSSION**

The Plan argues that each of Dwyer's claims is subject to dismissal for the reason that Dwyer has not exhausted the administrative remedies available under the Plan.

Although "the text of ERISA nowhere mentions the exhaustion doctrine," see Amato v. Bernard, 618 F.2d 559, 566 (9th Cir. 1980), the Ninth Circuit, for prudential reasons, has held that before an ERISA plan participant may bring an action seeking an award of benefits or a declaration of rights under a plan, such plaintiff must first exhaust administrative remedies available under the plan, unless he shows such exhaustion should be excused.  See Diaz v. United Agricultural Employee Welfare Benefit Plan and Trust, 50 F.3d 1478, 1480, 1484-86 (9th Cir. 1995) (holding district court properly dismissed participant's claim for benefits under plan, where participant failed to exhaust administrative remedies and did not demonstrate administrative remedies where inadequate or futile); Amato, 618 F.2d at 566-69 (holding district court properly dismissed claim by participant for declaration of rights under pension plan, where participant failed to exhaust administrative remedies and did not demonstrate administrative remedies were inadequate or futile).

Here, the Plan includes the following provision, setting forth an administrative

4

process for resolving grievances of plan participants:

> If a Participant or Designated Beneficiary has any grievance, complaint or claim concerning any aspect of the operation or administration of the Plan or Pension Fund, including but not limited to claims for benefits and complaints concerning the investments of Plan Assets . . . , the Participant or Designated Beneficiary will submit a claim in accordance with the written procedures set forth in the summary plan description for the Plan.

(See Def.'s Mot. to Dismiss, Ex. G § 22.1).

The summary plan description for the Plan describes in detail the procedures for submitting claims concerning pension benefits (see id. Ex. H), and sets forth the following two "key points" pertaining to the "claim procedures":

> A. You are not required to file a claim for your Pension Benefits under the Plan.
>
> B. If you think you are entitled to a benefit or a greater benefit under the Plan than the Pension Benefit that the Recordkeeper indicates you are eligible for, you may file a claim for benefits in writing.

(See id. Ex. H at 29.) The summary plan description also sets forth the following four "key points" pertaining to a "notification of benefit denial":

> A. You will receive a written notice (generally within 90 days) from the Recordkeeper if your claim for benefits is denied.
>
> B. You have 60 days after receipt of the Benefit Denial to submit a written request to appeal the decision.
>
> C. Generally, you will receive a final determination regarding your appeal within 60 days of receipt of your appeal by the Recordkeeper.
>
> D. You may not file a lawsuit against the Plan until you complete the appeal process.

(See id.)

In his complaint, Dwyer alleges that he has not exhausted the above-referenced administrative procedures for the reason that "on information and belief it would be futile to do so." (See Compl. ¶ 112.) The Court next considers whether exhaustion should be excused as to any or all of Dwyer's claims.

In his complaint, Dwyer alleges one basis for futility, specifically, that requiring him to exhaust his claims would be "futile" for the "same reason" that the district court hearing another case against the Plan, specifically, Barnes v. AT&T Pension Benefit Plan -

1  NonBargained Program, found that "it would have been futile for class members to exhaust
2  their claims in the Barnes litigation." (See Compl. ¶ 112.) As set forth below, the Court is
3  not persuaded.

   In Barnes, the named plaintiff terminated his employment and received from the
5  Plan a notification setting forth the pension benefits to which he was entitled, whereupon he
6  "submitted a complaint with [the Plan], contending that he was entitled to additional
7  benefits." See Barnes v. AT&T Pension Benefit Plan - NonBargained Program, 270 F.R.D.
8  488, 492 (N.D. Cal. 2010). The Plan then "denied Barnes' complaint, whereupon Barnes
9  appealed the denial through [the Plan's] internal review process." See id. After Barnes'
10 appeal was denied, he filed a civil action seeking a determination that he was entitled to
11 additional benefits, and alleged such claims on behalf of a class assertedly entitled to the
12 same benefits. See id. In considering Barnes' motion for class certification, the district
13 court found that it would be futile to require the absent class members to exhaust their
14 administrative remedies because their respective claims presented the same issue of plan
15 interpretation as had been previously exhausted by Barnes. See id. (holding "absent class
16 members are not required to have exhausted their claims through a plan's internal review
17 procedures so long as the named plaintiff has done so").

   As the Plan points out, however, the instant case is readily distinguishable from
19 Barnes. Specifically, Dwyer, the sole named plaintiff herein, has not exhausted his claims,
20 nor does he allege that any absent class member has exhausted his or her claims. Thus,
21 unlike the situation in Barnes, the instant action involves claims that have not been
22 exhausted by anyone. Further, the holding set forth in Barnes is not directly applicable
23 herein, because Dwyer does not contend he is a member of the Barnes class.[4]

24   In his opposition, Dwyer makes two additional arguments. First, according to Dwyer,

---

[4] In his complaint, Dwyer alleges that the claims set forth in Barnes are "similar" to the claims alleged herein (see Compl. ¶ 2), and that the instant case should be "consolidated" with Barnes (see Compl. ¶ 13). The district judge before whom the Barnes action is pending, however, has found that Barnes and the instant action are "not related." (See Barnes, Civil Case No. 08-5048, Doc. 220, filed January 6, 2011.)

6

1  the Plan, through counsel, has made arguments in the motion to dismiss filed herein that,
2  Dwyer asserts, indicate the plan administrator would deny his claim, thus rendering
3  exhaustion futile.  In other words, Dwyer argues exhaustion of administrative remedies has
4  become futile in light of circumstances occurring after he filed his complaint.  The Court
5  disagrees.

6        The District of Columbia Circuit, in Tesoro Refining and Marketing Co. v. Federal
7  Energy Regulatory Comm'n, 552 F.3d 868 (2009), recently considered an argument
8  analogous to that made by Dwyer, and found such argument meritless.  In that case, a
9  plaintiff sought judicial determination of a decision of the Federal Energy Regulatory
10 Commission, but failed to exhaust its claims prior to filing suit.  See id. at 872.  With respect
11 to exhaustion, the plaintiff asserted futility, based on rulings the agency had made
12 subsequent to the filing of the plaintiff's civil action.  See id. at 873-74.  The District of
13 Columbia Circuit rejected the plaintiff's argument, which it characterized as "backwards,"
14 observing that the futility doctrine is invoked "to prove the worthlessness of an argument
15 before an agency that has rejected it in the past," and is inapplicable where a party argues
16 that "it would have been futile to raise an argument because the agency would reject it in
17 the future."  See id. at 874.  The District of Columbia Circuit's observations are equally
18 applicable to the instant case, in which Dwyer made a deliberate choice not to exhaust his
19 administrative remedies, but, rather, to attempt to require the Plan to take a position as to
20 his claims in the first instance through counsel in the context of an adversarial proceeding,
21 rather than to assess them in the context of nonadversarial administrative claims
22 procedures.  See Vaughn v. Scottsdale Healthcare Corp. Health Plan, 546 F.3d 620, 631
23 (9th Cir. 2008) (observing ERISA plan "internal review procedures" are "nonadversarial"
24 and "contemplate that a claimant's appeal will be heard by an impartial decisionmaker").

25       Additionally, in his opposition, Dwyer argues that Counts One and Three, as alleged
26 in the complaint, are not subject to exhaustion for the asserted reason that said counts
27 allege violations of ERISA statutory provisions, rather than violations of the terms of the
28

7

Plan.[5]  The Court again disagrees.

The Ninth Circuit has held exhaustion of plan remedies is not required where a plaintiff alleges that a plan administrator violated 29 U.S.C. § 1140, which statute "prohibits interference with or discrimination against an employee's exercise or attainment of plan benefits."  See Diaz, 50 F.3d at 1483 (citing cases).  Contrary to Dwyer's argument, however, the Ninth Circuit has not extended such holding to cases in which a plaintiff seeks a determination as to whether he is entitled to plan benefits.  See id. at 1483-84.  As set forth above, each of Dwyer's claims is based on the assertion that, upon a subsequent termination, and based on his interpretation of the terms of the Plan, he will be entitled to receive both a Redetermined ATB and a cash balance benefit such as a CAM Benefit.  Although the Ninth Circuit has noted that "many employee claims for plan benefits may implicate statutory requirements imposed by ERISA," and that "when the administrative resolution of those claims is then presented for judicial review, courts may then be called upon to determine whether the plan administrators have construed or dealt with those statutes in an appropriate manner," such "prospect does not give a claimant the license to attach a 'statutory violation' sticker to his or her claim and then to use that label as an asserted justification for a total failure to pursue" administrative remedies.  See id. at 1484.

Further, as the Plan observes, the plan administrator has "complete and absolute discretion to interpret the Plan" (see Def.'s Mot. to Dismiss Ex. G § 17.2), which, in turn, requires the Court to defer to the plan administrator's interpretation of plan terms.  See Conkright v. Frommert, 130 S. Ct. 1640, 1646 (2010) (holding "when the terms of a plan grant discretionary authority to the plan administrator, a deferential standard of review remains appropriate even in the face of a conflict"); see also id. at 1650 (holding "[d]eference to plan administrators, who have a duty to all beneficiaries to preserve limited plan assets . . . helps prevent [ ] windfalls for particular employees").  Here, at least insofar as Dwyer has set forth his claim in the instant complaint, Dwyer's claim for benefits appears

---

[5]Dwyer does not make the argument with respect to Count Two.

8

to revolve around interpretation of plan terms, yet the Court does not have the benefit of the plan administrator's interpretation thereof.  See, e.g., Vizcaino v. Microsoft Corp., 120 F.3d 1006, 1013-15 (9th Cir. 1997) (holding, where plan administrator was not given opportunity to interpret plan term in administrative proceedings, courts "should not allow [them]selves to be seduced into making a decision which belongs to the plan administrator in the first instance").

Lastly, requiring exhaustion is appropriate because the precise nature of Dwyer's claim may well become clearer upon development of an administrative record.  Dwyer continues to be employed (see Compl. ¶ 99), does not assert he is entitled to receive pension benefits while he remains employed, and does not contend, nor could he contend, that there exists no possibility the Plan will be amended in the future, perhaps in a manner that would benefit him.  See Amato, 618 F.2d at 567 (holding plan administrators are "granted broad fiduciary rights and responsibilities under ERISA" and "implementation of the exhaustion requirement will enhance their ability to expertly and efficiently manage their funds by preventing premature judicial intervention in their decision-making processes").

In sum, the Court finds Dwyer has failed to demonstrate a cognizable basis for relief from the requirement that he exhaust his administrative remedies prior to filing suit.

Accordingly, the Plan's motion to dismiss will be granted.

## CONCLUSION

For the reasons stated above, the motion to dismiss is hereby GRANTED, and the complaint is hereby DISMISSED without prejudice.

**IT IS SO ORDERED.**

Dated: April 20, 2011

MAXINE M. CHESNEY
United States District Judge